UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cv-00160-FDW-DSC

| | |
|---|---|
| BRADLEY G. CRUMP, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>PNC FINANCIAL SERVICES GROUP, )<br>INC. and PNC BANK, N.A., )<br>)<br>Defendants. )<br>)<br>) | ORDER |

THIS MATTER is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim (Doc. No. 5). Plaintiff has responded, (Doc. No. 9), Defendants have replied (Doc. No. 10), and this motion is now ripe for review. For the reasons stated below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

**A. Factual Background**

This claim arises out of disputes relating to PNC's management of a loan file. Plaintiff bought a property located in Charlotte, North Carolina in 2003 after obtaining a mortgage loan from RBC Centura Bank. (Doc. No. 1, p. 3). Plaintiff contends that Defendants acquired the promissory note, deed of trust, and all servicing rights to this mortgage in 2012. Id. Plaintiff admits that a third-party property manager he hired stopped making payments on the loan sometime around 2008 and 2009. Id. Plaintiff also admits that he later lost his job and was unable to make payments himself on the loan. Id. at 4.

1

Around 2013, Plaintiff alleges that he began trying to sell the property. Id. Plaintiff contends that on multiple occasions, he found a buyer and contacted PNC for a "payoff quote." See id. at 4–6. Plaintiff alleges that each time he contacted PNC, PNC said it was unable to find the loan in its system and was unable to provide a payoff quote. See id. As a result, Plaintiff contends that he lost multiple buyers. See id. Plaintiff alleges that PNC, despite not being able to locate his loan to calculate a payoff quote, continued to send monthly statements and correspondence to him at his home address. Id. at 4. According to Plaintiff, Defendants also sent Plaintiff "loss mitigation options" regarding his loan and Plaintiff filed "hardship assistance request[s]" with Defendants in August and October 2017. Id. at 6. Plaintiff contends that Defendants denied his requests for hardship assistance, "while simultaneously continuing to state they could not find Plaintiff's property in the PNC system." Id.

On January 10, 2017, Plaintiff contends that he sent a letter to PNC requesting an accounting of his loan. Id. at 4. Plaintiff alleges that this letter was a "qualified written request" ("QWR") and attaches this purported QWR to his complaint as Exhibit 4. (Doc. No. 1-4). Defendants deny that this letter is a QWR, but admit that they did not respond to the correspondence. (Doc. No. 12, p. 4).

Over the years, Plaintiff states that the property has fallen into disrepair and is now boarded up. (Doc. No. 1, p. 5–6). As a result, Plaintiff states that the City of Charlotte began assessing civil penalties on July 19, 2017 for housing code violations. Id.; (Doc. No. 1-7). Plaintiff contends that he cannot sell the property because Defendants have not been able to find the loan in their system and will not offer a payoff quote. (Doc. No. 1, p. 6).

**B. Procedural Background**

Plaintiff filed suit against Defendants on March 30, 2018. In his complaint, Plaintiff alleges

2

the following causes of action against Defendants: 1) Violation of the Real Estate Settlement Procedures Act ("RESPA"), 2) Unfair and Deceptive Acts and Practices, 3) Negligent Servicing, and 4) Violation of the North Carolina Mortgage Debt Collection and Servicing Act. Id. at 6–12. Defendants move to dismiss all of Plaintiff's claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 5).

## II. LEGAL STANDARDS

Rule 12(b)(6) allows a defendant to move for dismissal when a plaintiff has not stated a claim that is recognized by law. A court may consider written instruments attached as exhibits to the complaint when resolving a motion pursuant to Rule 12(b)(6) without converting the motion into one for summary judgment. Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." Id. While a high level of factual detail is not required, a complaint needs more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. On the other hand, a plaintiff's legal conclusions are not entitled to a presumption of truth. Id. at 678.

## III. ANALYSIS

### A. Plaintiff's RESPA Claim

Plaintiff claims that Defendants violated the Real Estate Settlement Procedures Act ("RESPA") by not responding to Plaintiff's "Qualified Written Request" ("QWR"). (Doc. No. 1, p. 6–7). The Court notes that the December 10, 2017 letter is the only document that Plaintiff alleges is a QWR in the complaint. See id. Since this document was attached as an exhibit to Plaintiff's complaint, (Doc. No. 1-4), this Court can analyze it for sufficiency under a Rule 12(b)(6) motion without converting the motion to one of summary judgment. See Occupy Columbia, 738 F.3d at 116.

Under RESPA, a borrower can make a QWR to inquire as to information relating to the servicing of a federally related mortgage loan. 12 U.S.C. § 2605(e)(1)(A) (2012). A QWR is defined as:

> [A] written correspondence . . . that--
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

Id. § 2605(e)(1)(B). Within 30 days of receiving a QWR, a servicer is required, *inter alia*, to make appropriate corrections to the account of the borrower, provide written explanation or clarification to the borrower, or explain why information requested is unavailable to the servicer. See id. § 2605(e)(2)(A)–(C).

However, "the statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to servicers." Poindexter v. Mercedes-Benz Credit Corp., 792 F.3d 406, 413 (4th Cir. 2015) (quoting Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 666 (9th Cir.

4

2012)) (emphasis added). In Poindexter, the Fourth Circuit held that the duty to respond does not extend to inquiries regarding "the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement." See id. (citation omitted); see also Vaughan v. Wells Fargo Bank, N.A., No. 6:15-cv-00038, 2016 WL 2901752, at *4 (W.D. Va. May 18, 2016) ("Courts have been clear that where a borrower's correspondence concerns the origination of the loan or challenges the servicer's status, such correspondence is outside the scope of the QWR for a RESPA claim."). In other words, if information sought in a communication does not pertain to the servicing of a loan, it is not a QWR and there is no obligation to respond under 12 U.S.C. § 2605(e). See Poindexter, 792 F.3d at 414.

Here, the Court finds that Plaintiff's December 10, 2017 letter was not a QWR and therefore did not trigger any duty to respond under RESPA. The Court first notes that the letter is extremely long (twenty-seven pages), includes 179 separate numbered requests for documents and information, and is largely unintelligible. While these factors alone do not disqualify the correspondence as a QWR, the stated purpose of the letter and the nature of the requests clearly show that the purpose of this communication was not to genuinely seek information regarding the servicing of the loan, but rather to challenge the validity of the loan, question the circumstances around its origination, and threaten legal action. Throughout the entire letter, there is not one clear mention of problems regarding the servicing of the loan or Plaintiff's alleged problems in getting PNC to locate the loan in their system for a payoff quote. (See Doc. No. 1, p. 4). Instead, Plaintiff's identified issues in the letter all seem to revolve around the validity of the loan and the legal status of PNC as a servicer of that loan.

Plaintiff's purposes for sending this correspondence are made clear in the first few pages

of this correspondence. Plaintiff's letter starts, in the very first paragraph, by alleging legal claims against PNC and its CEO. (See Doc. No. 1-4, p. 1 ("[W]e believe there are claims against you and your company for negligence, breach of contract, and breach of fiduciary duty, along with other claims in law and equity . . . .")). The letter goes on to allege that certain documents were withheld from the Plaintiff prior to the loan's closing (not during servicing), which cause Plaintiff to "express an immediate need and desire to rescind the alleged subject loan transaction." Id. Plaintiff's letter then challenges the validity of the debt and PNC's ability to collect on it. See id. at 4 ("I hereby demand that you provide proof to me that you are in fact the rightful holder in Due Course . . . . If you are unable to provide this proof as I have requested, then you are not a party of interest and cannot rightfully enforce your claim under U.C.C.-Article 3 3-301."). In the letter, Plaintiff demands that PNC stop all collection activities on the loan. See id. at 5 ("Under US Code . . . this debt is now officially in dispute. By law, all collection activities must cease until this matter is resolved.").

The part of Plaintiff's letter purporting to be a QWR follows this long preamble. In the beginning of the purported QWR, Plaintiff states that he is requesting the information to prove the validity of the loan and PNC's ability to service it:

> I hereby demand absolute 1st hand evidence from you of the original uncertificated or certificated security regarding PNC BANK (Alleged Loan Number 9012. In the event you do not supply me with the very security it will be positive confirmation on your part that you never create and owned one. . . . Absent the actual evidence of the security[,] I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you say I owe.

Id. at 6. For the next fourteen pages, Plaintiff's purported QWR then includes 179 separate requests for documents and information. Many of these requests do not pertain to servicing at all. See, e.g., id. at 9 (requesting "Any certificated of [*sic*] uncertificated security used for the funding of this

account"); id. at 11 (requesting "Any documentation evidencing the Mortgage/Deed of Trust is **not** a constructive trust or any other form of trust") (emphasis in original). Most of these requests ask for copious amounts of documents and information. See, e.g., id. at 12 (requesting "Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account"). In twenty-seven pages, Plaintiff does not identify one specific error in accounting relating to the servicing of his loan. The nature of Plaintiff's requests coupled with the stated purposes of the communication causes this Court to find that the letter was sent with the purposes of challenging the loan's validity and the status of PNC as a legitimate servicer.

To the extent that some of Plaintiff's QWR requests do ask for information pertaining to servicing, this Court finds that these requests were made in concordance of Plaintiff's stated purposes of challenging the validity of the loan and the status of PNC as the servicer; therefore, the requests do not trigger a duty to respond. See Poindexter, 792 F.3d at 413 (holding that communications with such purposes do not qualify as a QWR). Furthermore, the communication as a whole does not provide "sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). RESPA does not put the burden on servicers to mine through a mass of largely frivolous requests to identify a few nuggets of information that may fall under RESPA's purview. See Ward v. Security Atlantic Mortg. Electronic Registration Sys., Inc., 858 F. Supp. 2d 561, 574 (E.D.N.C. 2012) (holding that a letter seeking copies of loan documents, inspection reports, appraisals, a loan transactional history, and assignments of the deed of trust was not a QWR).

For the above reasons, this Court finds that Plaintiff's December 10, 2017 communication is not a qualified written request for the purposes of RESPA and Plaintiff has failed to state a

plausible claim for a RESPA violation. Defendants' Motion to Dismiss with regards to Plaintiff's first claim for RESPA violations is therefore GRANTED and Plaintiff's RESPA claim is DISMISSED WITH PREJUDICE.

**B. Plaintiff's NC Mortgage Debt Collection and Servicing Act Claims**

Plaintiff also alleges that Defendants violated N.C. Gen. Stat. § 45-93 by failing to respond to his written request for information. N.C. Gen. Stat. § 45-93 creates a duty for servicers of home loans to respond to borrower requests for information. See N.C. Gen. Stat. § 45-93. According to the statute, servicers of home loans must:

> Provide a written statement to the borrower within 10 business days of receipt of a written request from the borrower that includes or otherwise enables the servicer to identify the name and account of the borrower and includes a statement that the account is or may be in error or otherwise provides sufficient detail to the servicer regarding information sought by the borrower.

Id. This language strongly tracks the language of the federal RESPA statute defining a "qualified written request." See 12 U.S.C. § 2605(e)(1)(B).

Here, Plaintiff has not plausibly alleged a claim under N.C. Gen. Stat. § 45-93. The Court once again notes that outside of the December 10, 2017 letter, Plaintiff does not plead any other written requests in his Complaint. (Doc. No. 1, p. 11–12). As explained above, Plaintiff's letter does not clearly identify any specific error regarding the servicing of the loan. Furthermore, Plaintiff's 179 separate requests for documents and information, many of which have nothing to do with servicing, do not provide sufficient detail to the servicer regarding information sought by the borrower. See N.C. Gen. Stat. § 45-93(1).

For these reasons, Defendants' Motion to Dismiss Plaintiff's fourth cause of action is GRANTED and Plaintiff's claim under the North Carolina Mortgage Debt Collection and Servicing Act, N.C. Gen. Stat. § 45-93, is DISMISSED WITH PREJUDICE.

**C. Plaintiff's Remaining Claims**

The Court has reviewed the remaining two claims and arguments regarding their dismissal in the briefs. In light of applicable law, the Court finds Plaintiff has sufficiently stated plausible claims against Defendants. For that reason, Defendants' Motion to Dismiss Plaintiff's Negligent Servicing and Unfair and Deceptive Acts and Practices claims is DENIED WITHOUT PREJUDICE. Defendants may reassert any applicable arguments regarding these claims at summary judgment.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. No. 5) is GRANTED IN PART and DENIED IN PART. As stated above, Plaintiff's December 10, 2017 letter was not a qualified written request, and therefore, Plaintiff fails to allege sufficient facts to support his claim under RESPA. Furthermore, this Court finds that Plaintiff's request did not trigger a similar duty to respond under N.C. Gen. Stat. § 45-93. Thus, these claims arising from the December 10, 2017 request are DISMISSED WITH PREJUDICE. Defendants' Motion to Dismiss regarding Plaintiff's remaining claims is DENIED.

IT IS SO ORDERED.

Signed: October 1, 2018

Frank D. Whitney
Chief United States District Judge